**United States Bankruptcy Court**
**Middle District of Florida**
**Tampa District**

In re:  K.E. MARTIN DEVELOPMENT OF
PASCO, INC.,

        Debtor,

_____/

K.E. MARTIN DEVELOPMENT OF          Case No. 8:18-bk-06979-MGW
PASCO, INC.,                        Chapter 11

        Plaintiff,

vs.                                 Adv. No. 8:18-ap-00506-MGW

CORE BUSINESS FINANCE, INC.,

        Defendant.

_____/

**CORE BUSINESS FINANCE, INC.'S**
**ANSWER AND DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant Core Business Finance, Inc. ("Core" or "Defendant"), through its servicing

agent Kapitus Servicing, Inc., formerly Colonial Funding Network, Inc. ("Colonial"), responds

to the correspondingly numbered paragraphs of the Amended Complaint filed by Plaintiff K.E.

Martin Development of Pasco, Inc. ("KEM" or "Debtor").[1]

---

[1] Core does not consent to the entry of final orders or judgments by this Court.  Core expressly
reserves all of its rights to arbitrate (including threshold issues relating to arbitration, including,
without limitation, the determination of core or non-core, subject matter jurisdiction, and the
ability to enter final orders), to pursue its Motion for Stay Pending Appeal, the appeal itself, and
any and all arguments regarding the jurisdiction of this Court.  This Answer is filed in an
abundance of caution until the Stay Pending Appeal is ruled upon, is filed under compulsion of
court order, and is without waiver of any rights and remedies available at law and in equity.
Core refers KEM to the proof of claim (Claim No 6-1) and amended proof of claim (Claim No.
6-2) for its reservation of rights with respect to its claims in this bankruptcy proceeding.

**Answer**

1. Admitted.

2. Denied, except without knowledge as to KEM's construction site cleaning services or its operations as debtor-in-possession.

3. Denied, except admitted the parties entered into the Revenue Based Factoring (RBF/ACH) Agreement on October 25, 2017 (the "Revenue Based Factoring Agreement"), and that the parties agreed that Colonial would act as servicer and may act on behalf of Funder under the agreement. A copy of the Revenue Based Factoring Agreement is attached hereto as **EXHIBIT A**.

4. Denied, except admitted that Core is a Florida corporation.

5. Denied, except admitted that Colonial as servicer filed a proof of claim on behalf of Core, (Claim no. 6-1, and amended proof of claim (Claim 6-2)). Colonial refers KEM to the proof of claim (Claim no. 6-1) and amended proof of claim (Claim 6-2) for its true and correct terms.

6. Denied, except admitted that Core purchased $345,000 of future receivables from KEM for a purchase price of $250,000. Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms. (*See* EXHIBIT A at 1.)

7. Denied, except admitted the specified Daily Amount under the terms of the Revenue Based Factoring Agreement was $1,530, which amount was subject to adjustment and reconciliation to the Specified Percentage of collections. Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms. (*See* EXHIBIT A at 1.)

8. Denied, except admitted the Specified Percentage under the terms of the Revenue Based Factoring Agreement is 9% of Debtor's estimated collections (*see* EXHIBIT A at 1), and admitted that the initial proof of claim (Claim no. 6-1) incorrectly refers to New York statutory

interest of 9%. Colonial refers KEM to the Revenue Based Factoring Agreement and the proof of claim (Claim no. 6-1) and the amended proof of claim (Claim no. 6-2) for its true and correct terms.

9. Denied, except admitted that the Revenue Based Factoring Agreement includes the quoted sentence. Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms.

10. Denied, except admitted that the Revenue Based Factoring Agreement states that the Funder is not receiving interest, and further provides that despite the express disclaimer that if any amount is deemed interest it should not "exceed the highest rate permitted by applicable law." Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms. (*See* <u>EXHIBIT A</u> at § 1.9.)

11. Admitted.

### Count I – Fraudulent Transfer

12. Admitted that this is an action that purports to avoid obligations and transfers under the Revenue Based Factoring Agreement as fraudulent transfers pursuant to § 548, but denied that it states a viable legal claim for relief, or that it's true purpose is to assert a fraudulent transfer claim under §548.

13. Denied, except admitted that KEM has obligations under the Revenue Based Factoring Agreement, and that Core was granted a UCC-1 lien against all of KEM's assets under the terms of the Revenue Based Factoring Agreement (the "UCC-1"). Colonial refers KEM to the Revenue Based Factoring Agreement and the UCC-1 for its true and correct terms.

14. Denied, except admitted that Core has a consensual UCC-l lien against all of Debtor's personal assets and that Core purchased $345,000 of receivables, and that Debtor has delivered

$266,145 of purchased receivables to Core under the terms of the Revenue Based Factoring Agreement. Colonial refers KEM to the Revenue Based Factoring Agreement and the UCC-1 for its true and correct terms. (*See* EXHIBIT A at 7.)

15. Without knowledge, and therefore denied.

16. Denied, except admitted that KEM sold $345,000 of future receivables to Core, and KEM has delivered $266,145 of the purchased receivables to Core under the terms of the Revenue Based Factoring Agreement, and that due to KEM's failure to comply with the covenants of the Revenue Based Factoring Agreement, the remaining amount of purchased, but as not yet delivered, receivables in the amount of $78,855, became due and payable, and began to accrue interest and other charges. Colonial refers KEM to the Revenue Based Factoring Agreement and the UCC-1 for its true and correct terms.

17. Denied that Florida law is applicable, otherwise, the Florida Statutes speak for themselves.

18. Denied.

In response to the WHEREFORE paragraph, Colonial denies that KEM is entitled to any relief, whether monetary, compensatory, declarative, equitable, costs, and/or fees relating to this matter, or in any other form sought by KEM.

### Count II – Declaratory Judgment

19. Admitted that this is an action that purports to seek declaratory judgment pursuant to 28 U.S.C. § 2201, including an action to determine the extent, validity and priority of liens, but denied that its true purpose is to assert such a claim or that it states a viable legal claim for relief.

20. Denied, except admitted that the KEM granted a UCC security interest against its assets, and that copies of the security agreement and financing statement are attached to Core's proof of

claim.  Colonial refers KEM to the proof of claim (claim 6-1), amended proof of claim (Claim 6-2),  UCC-1, and aforementioned security agreement for its true and correct terms.

21. Denied.  Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms.

22. Admitted.  Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms.

23. Admitted.  Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms.

24. Denied, except admitted that the Revenue Based Factoring Agreement is governed by Virginia law.  Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms.

25. Denied, except without knowledge and therefore denied as to whether Debtor is in doubt. Colonial refers KEM to the Revenue Based Factoring Agreement for its true and correct terms.

26. Denied.

27. Denied.

28. Denied.

29. Without knowledge and therefore denied.

In response to the WHEREFORE paragraph, Colonial denies that KEM is entitled to any relief, whether monetary, compensatory, declarative, equitable, costs, and/or fees relating to this matter, or in any other form sought by KEM.

## Count III – Injunctive Relief

30. Admitted that this purports to be an action for injunctive relief or an extension of the automatic stay pursuant to § 105, but denied that it states a viable claim for relief.

5

31. Denied, except admitted that Core commenced the Virginia Action, and a copy of the complaint from the Virginia Action is attached as **EXHIBIT B** (the "Virginia Complaint").

32. Denied, except admitted that Mr. and Mrs. Martin are defendants in the Virginia Action. Colonial refers KEM to the Virginia Complaint and the Revenue Based Factoring Agreement for its true and correct terms.

33. Denied, except with respect to conclusions of law, no response is required and therefore denies. Colonial refers KEM to the Virginia Complaint and the Revenue Based Factoring Agreement for its true and correct terms.

34. Denied, except with respect to conclusions of law, no response is required and therefore denies.  Colonial refers KEM to the Virginia Complaint for its true and correct terms.

35. Denied, except without knowledge as to whether Mr. and Mrs. Martin are the key principals of KEM.

36. Denied.

37. Denied.

38. Denied.

39. Denied.

In response to the WHEREFORE paragraph, Colonial denies that KEM is entitled to any relief, whether monetary, compensatory, declarative, equitable, costs, and/or fees relating to this matter, or in any other form sought by KEM.

## GENERAL DENIAL OF ALL ALLEGATIONS
## IN PLAINTIFF'S AMENDED COMPLAINT

ALL ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT THAT ARE NOT EXPRESSLY ADMITTED ABOVE ARE HEREBY DENIED IN THEIR ENTIRETY.

## AFFIRMATIVE AND OTHER DEFENSES

Core incorporates its affirmative pleading as set forth above into each of its affirmative and other defenses asserted below, and further states and sets forth its affirmative and other defenses, without assuming the burden of proof or persuasion as to such defenses that would otherwise rest on KEM, as follows:

1.     Ordinary course.  The complaint fails to state a claim for fraudulent transfer because the relationship between the parties, including payments to Core under the Revenue Based Factoring Agreement, were made in the ordinary course of business.  To the extent that Debtor transferred any interest in property to or for the benefit of an alleged transferee, such transfers were in payment of a debt incurred by the Debtor in the ordinary course of business or financial affairs of the Debtor and such transferee, and either (i) made in the ordinary course of business or financial affairs of the Debtor and such transferee, or (ii) made according to ordinary business terms.  Defendant received scheduled regular transfers that were consistent with the general norms of a factoring agreement and are the norm for the industry of purchasing receivables.

Additionally, the purchase and sale of Debtor's receivables was itself in the ordinary course of business.  The Revenue Based Factoring Agreement was the fifth such transaction between the parties – the parties previously entered into similar agreements on: (1) January 12, 2015; (2) April 20, 2015; (3) December 8, 2015; and (4) July 28, 2016.  Further, Plaintiff entered into similar agreements with other entities during that timeframe, including with Pearl Delta Funding, LLC (UCC-1 recorded on February 8, 2018) and Kings Cash Group (UCC-1 recorded on July 26, 2018).

2.      Reasonably equivalent value.  The complaint fails to state a claim for fraudulent transfer under 11 U.S.C. § 548 because KEM conceded that it received a cash payment equaling not less than 70% of the amount of receivables it promised to generate and collect and then deliver to Core in the future, which future receivables were subject to numerous contingencies and risks.

Further, Defendant provided KEM $243,680 on October 26, 2017 pursuant to the Revenue Based Factoring Agreement.  To date, Core has received $266,145 pursuant to the Revenue Based Factoring Agreement.  KEM received 91% of what Core has actually recovered since Core's funding on October 26, 2017 over 470 days ago.  During this time period, KEM has received the benefit of the full funded amount and all receivables generated while Core has not received the full benefit of its bargain.

3.      Fraud.  KEM committed wrongful conduct by fraudulently inducing Core to enter into the Revenue Based Factoring Agreement.  KEM misrepresented and omitted material facts, including that it was solvent when it executed the Revenue Based Factoring Agreement.  Core would not have entered into the Revenue Based Factoring Agreement but for its reasonable reliance on those material and fraudulent statements or omissions.  Those wrongful acts directly relate to the claims against Core, which are entirely based upon the Revenue Based Factoring Agreement.  Further, Core was directly injured by Debtor's wrongful acts.  Core paid Debtor the Purchase Price for the future receivables, and Core has not received the full benefit of its bargain.

Specifically, KEM represented in paragraph 2.9 of the Revenue Based Factoring Agreement, a signed, written document, that it was not insolvent and that it did not intend to file for bankruptcy protection.  Nancy Martin, on behalf of KEM, also made this representation during an October 26, 2017 phone call conducted by Colonial (the "Funding Call").  When asked

"have you been planning to file, or do you know of any reason to believe that your business will need to file for bankruptcy protection in the foreseeable future," Mrs. Martin answered "no." Core reasonably relied on these representations, and KEM knew these representations were materially false when they were made (KEM had been sued by Southern-Owners Insurance Company, Inc. for over $362,000 just prior to the Funding Call and entering into the Revenue Based Factoring Agreement).  Further, KEM expressly states in the Complaint that it *was* insolvent at the time it entered into the Revenue Based Factoring Agreement.

KEM also fraudulently stated that it would not enter any additional financing agreements in any form.  On or about February 1, 2018, approximately three months after entering into the Revenue Based Factoring Agreement with Core, KEM entered into a Revenue Purchase Agreement with Pearl Delta Funding, LLC, d/b/a Pearl Capital.  On or about May 3, 2018, KEM entered into a contract for the "Purchase and Sale of Future Receivables" with Kings Cash Group.  And on June 20, 2018, KEM entered into another Revenue Purchase Agreement with Pearl Delta Funding, d/b/a Pearl Capital.  Paragraph 2.10 of the Revenue Based Factoring Agreement states that "Merchant shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase of receivables or a loan to do the business with any party other than FUNDER without their written permission."  KEM therefore represented that it would not enter into any financing agreements, including the sale of its receivables, absent Core's written consent.  But Core did not provide, nor did KEM request, consent for these three contracts.  KEM's statement under Paragraph 2.10 was a false statement of a material fact.  KEM knew the statement was false at the time it was made.  It was made to induce Core to enter into the Revenue Based Factoring Agreement.  Core relied on this statement and was damaged because of that reliance.

KEM represented in Paragraph 2.11 of the Revenue Based Factoring Agreement that it had "good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever." But this statement was knowingly false. KEM in fact had encumbrances on its receipts, including by SunTrust Bank and First Gold Buyers, Inc., who had recorded UCC liens against all of KEM's assets, including its receipts and receivables. This fact was material. KEM knowingly and intentionally withheld this information with the intent that the representation induce Core. Core relied on this false statement and omission and was damaged because of it.

Under the terms of the Revenue Based Factoring Agreement, KEM agreed to use only one bank account to deposit all of its receivables, and authorized Colonial to collect the purchased receivables from the account by withdrawing ACH (Automatic Clearing House) payments from KEM's bank account. Colonial attempted 12 such ACH payments between July 12, 2018 and August 14, 2018, but they did not clear (i.e. they were rejected). Upon information and belief, the ACH payments did not clear because KEM began depositing all of the receivables into a different bank account in an effort to block Colonial from collecting the purchased receivables. KEM never intended to use only one bank account, and its representation that it would do such was knowingly false. This was a material statement that KEM made for the purpose of inducing Core to act in reliance thereon. Core relied on the correctness of this statement when it entered into the Revenue Based Factoring Agreement and would not have entered into that agreement otherwise. Core was damaged because of this reliance.

KEM's misrepresentations and omissions were made knowingly and with the intent to deceive Core, and to induce Core to enter into the Revenue Based Factoring Agreement and

advance funds to KEM.  Core relied upon KEM's misrepresentations and omissions in agreeing to enter into the Revenue Based Factoring Agreement and to advance the funds to KEM.  At the time, Core did not know, nor have any reason to know, that these statements and representations were false, or that KEM was intentionally omitting material information that it knew Core needed.  Core was damaged because the money advanced to KEM was not repaid, and Core did not receive the full amount of receivables that it purchased.

4.      Conversion.  KEM converted Core's property.  Pursuant to the Revenue Based Factoring Agreement, Core purchased KEM's receivables.  Yet KEM has prevented Core from collecting and utilizing its property.  KEM has committed an unauthorized act which permanently deprives Core of its property permanently or for an indefinite time.  KEM intentionally prevented Core from obtaining possession of its property.  Core had a right to possess the property, and has demanded its return, but the demand has not or cannot be met.

5.      In pari delicto.  The doctrine of *in pari delicto* is an equitable doctrine that states "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing."  *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1152 (11th Cir. 2006).  KEM has committed fraud and converted Core's property.  The allegations of paragraphs 3 and 4 above are expressly incorporated herein.

KEM misrepresented that it was not insolvent at the time it executed the Revenue Based Factoring Agreement.  It stated that it had not contemplated bankruptcy and would not file bankruptcy.  It represented it would not enter into other financing arrangements.  It represented it had good, complete, and marketable title to its receipts.  It represented it would only use one bank account.  These statements were all knowingly false and were made in order to induce Core to enter into the agreement and fund the Purchase Price under the Agreement.  KEM also

converted Core's purchased receivables under the Revenue Based Factoring Agreement.  These are clear wrongdoings by KEM, and KEM therefore should not benefit or recover damages in light thereof.

6.      Equitable estoppel.  KEM has committed fraud and converted Core's property. The allegations of paragraphs 3 and 4 above are expressly incorporated herein.  KEM committed wrongful conduct by fraudulently inducing Core to enter into the Revenue Based Factoring Agreement when KEM misrepresented that it was solvent at the time it executed the Revenue Based Factoring Agreement.  It stated that it had not contemplated bankruptcy and would not file bankruptcy.  It represented it would not enter into other financing arrangements.  It represented it had good, complete, and marketable title to its receipts.  It represented it would only use one bank account.  These statements were all knowingly false and were made in order to induce Core to enter into the agreement and fund the Purchase Price under the Agreement.  KEM also converted Core's purchased receivables under the Revenue Based Factoring Agreement.  Core would not have entered into the Revenue Based Factoring Agreement but for KEM's fraudulent statements.  Those wrongful acts directly relate to the claims against Core, which are entirely based upon the Revenue Based Factoring Agreement.  KEM also converted Core's purchased receivables under the Revenue Based Factoring Agreement.  Further, Core was directly injured by Debtor's wrongful acts.  Core paid Debtor the Purchase Price in return for a promised delivery of future receivables, and Core has not received the full benefit of its bargain.

7.      Unclean hands.  KEM has committed fraud and converted Core's property.  The allegations of paragraphs 3 and 4 above are expressly incorporated herein.  KEM committed wrongful and/or inequitable conduct by fraudulently inducing Core to enter into the Revenue Based Factoring Agreement and converting Core's purchased receivables under the Revenue

Based Factoring Agreement.  KEM misrepresented that it was solvent when it executed the Revenue Based Factoring Agreement.  It stated that it had not contemplated bankruptcy and would not file bankruptcy.  It represented it would not enter into other financing arrangements. It represented it had good, complete, and marketable title to its receipts.  It represented it would only use one bank account.  These statements were all knowingly false and were made in order to induce Core to enter into the agreement and fund the Purchase Price under the Agreement. KEM also converted Core's purchased receivables under the Revenue Based Factoring Agreement.  Core would not have entered into the Revenue Based Factoring Agreement but for its reasonable reliance on those material and fraudulent statements.  Those wrong acts directly relate to the claims against Core, which are entirely based upon the Revenue Based Factoring Agreement.  Further, Core was directly injured by Debtor's wrongful acts.  Core paid Debtor the Purchase Price of future receivables, and Core has not received the full benefit of its bargain.

8.     The Revenue Based Factoring Agreement contains a savings clause which precludes the Court from determining that the Revenue Based Factoring Agreement is usurious. Paragraph 1.9 states, in pertinent part, that "[i]n no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law.  In the event that a court determines that [Core] has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and [Core] shall promptly refund to [KEM] any interest received by [Core] in excess of the maximum lawful rate, it being intended that [KEM] not pay or contract to pay, and that [Core] not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by [KEM] under applicable law."  (EXHIBIT A at § 1.9.)

9.      Waiver and laches.  The Revenue Based Factoring Agreement was the fifth such transaction between the parties since January 2015.  KEM did not object to any of the previous transactions.  This constitutes a voluntary, intentional relinquishment of a known right.  KEM's failure to timely assert the claims was prejudicial to Core, who has entered into four additional contracts with KEM since KEM could have asserted these claims (although Colonial disputes the validity thereof), and Core would not have entered into the additional contracts if KEM had done so.

Additionally, the Revenue Based Factoring Agreement states in paragraph 1.7 that "in no event will [Core] (or any of the Funders) be liable for any claims asserted by [KEM] under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by [KEM] and [Kenneth and Nancy Martin]."  (EXHIBIT A at § 1.7.)

10.     Failure to state a claim for which relief can be granted under Rule 12(b)(6).  As a separate affirmative defense to the Complaint, and to each purported claim thereof, Defendant submits that the Complaint fails to state a claim against Defendant and fails to state facts sufficient to constitute a cause of action pursuant to Federal Rules of Civil Procedure 9 and 12(b)(6) and other applicable law, and Plaintiff has failed to state a claim upon which relief may be granted.

11.     As a separate affirmative defense to the Complaint, and to each purported claim thereof, to the extent it is found that the Debtor transferred any interest in property to or for the benefit of the Debtor, any transfer would also be to the benefit of the Guarantors, Kenneth and Nancy Martin.  On information and belief, at all relevant times, Kenneth and Nancy Martin were the owners/operators/directors/managers of the Debtor.  In addition to signing the Revenue

Based Factoring Agreement in their official capacity on behalf of the Debtor, Kenneth and Nancy Martin also signed the agreement, individually, as Guarantors, agreeing to be obligated to all terms of the Revenue Based Factoring Agreement.  Further, Kenneth and Nancy Martin also signed a personal guaranty of performance located at pages 7-8 of the Revenue Based Factoring Agreement.  Pursuant to the guaranty, Kenneth and Nancy Martin are responsible for, *inter alia*, any amounts previously paid by KEM or any guarantor pursuant to the Revenue Based Factoring Agreement and which are returned to KEM due to this bankruptcy proceeding. Defendant reserves the right to assert, or seek leave to assert, any and all claims against Kenneth and Nancy Martin, including, without limitation, for any amounts KEM may avoid and recover from Core in this proceeding, because Defendant is currently barred from joining the guarantors to this action due to Court order.

12.    Lack of subject matter jurisdiction under Rule 12(b)(1).   Core's Motion to Compel Arbitration is currently on appeal.   "The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction."  *Farris v. Carnival Corp.*, 2018 WL 3699333, at \*2 n. 2 (S.D. Fla. Apr. 5, 2018); *see MRI Scan Ctr., L.L.C. v. Nat'l Imaging Assocs., Inc.*, 2013 WL 1899689, at \*2 (S.D. Fla. May 7, 2013) ("courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)"); *Falcon v. CarMax Auto Superstores, Inc.*, 2018 WL 3699336, \*2 n. 2 (S.D. Fla. May 18, 2018) ("We must treat a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction").  As Core has invoked a valid arbitration agreement, under which these claims are arbitrable, the Bankruptcy Court lacks subject matter jurisdiction over KEM's claims in its Amended Complaint.

13.     Improper Venue under Rule 12(b)(3).  Core has exercised its contractual right to arbitrate under the Revenue Based Factoring Agreement.  While the Bankruptcy Court has denied Core's Motion to Arbitrate, that order is currently on appeal.  As Core has elected to arbitrate these claims pursuant to the express terms of the Revenue Based Factoring Agreement, the Bankruptcy Court is an improper venue.

14.     This action is barred as Colonial moved to stay the instant action until arbitration has been conducted in accordance with the terms of the parties' written agreement for arbitration included in the Revenue Based Factoring Agreement.

15.     The claims alleged by KEM in the instant action are all contractual or Florida statutory issues that do not stem or arise from the Bankruptcy Code, nor do they require specialized knowledge that only Bankruptcy judges possess.  *See In re Electric Machinery Enterprises, Inc.*, 479 F.3d 791, 797 (11th Cir. 2007) ("A proceeding is not core '[if] the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy.'"); *see also In re Providence Fin. Invs., Inc.*, 593 B.R. 884, 891 (Bankr. S.D. Fla. 2018) ("[C]ourts are not bound by a plaintiff's characterization and may look beyond the label asserted in the complaint to ascertain the 'claim's true substance.'"); *Tabas v. Fordberry PLC*, 395 B.R. 182, 193 (Bankr. S.D. Fla. 2008) ("Finally, arbitrability turns on the underlying facts of plaintiff's claims, not on the legal labels the plaintiff attaches to them.").  Thus, the claims are non-core, and therefore arbitration is mandatory and the Bankruptcy Court does not have jurisdiction to adjudicate such claims.

Further, even if core, arbitrating these claims does not inherently conflict with the Bankruptcy Code, and thus the claims should be arbitrated and the Bankruptcy Court does not have jurisdiction to adjudicate such claims.  *See Tomberlin*, 2017 B.R. 410337, at *3 (stating a §

548 action is arbitrable because "it appears that the *true substance* of [the] fraudulent transfer claim is essentially an extension of the breach of contract claim."); *Harrelson*, 537 B.R. at 26-27 (fraudulent conveyance claim, although core, was arbitrable because it was directly connected to the facts undergirding turnover and contract claims); *In re Pfeiffer*, 2011 WL 4005504 at *5 ("If there is any discretion concerning the core fraudulent transfer claim [under § 548], I decline to exercise such discretion, as this claim is but a variant of the plaintiff's state court usury claim and falls within the scope of the parties' arbitration provision.").

Moreover, the Bankruptcy Court's ability to even make a core or non-core determination is an issue that only the arbiter could decide as it is a gateway issue to arbitrability.  *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 526 (2019) ("The parties to such a contract may agree to have an arbitrator decide not only the merits of a particular dispute, but also "'gateway' questions of 'arbitrability.'"  Therefore, when the parties' contract delegates the arbitrability questions to an arbitrator, a court may not override the contract . . . ")(internal citations removed).  The parties' incorporation of the AAA rules into the Contract clearly and unmistakably evince an intent to delegate gateway questions of arbitrability to the arbitrator.  *See Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308 (11th Cir. 2014);  *Jpay, Inc. v. Kobel*, 904 F.3d 923, 937-38 (11th Cir. 2018) ("By expressly incorporating two sets of AAA rules, [the contract] clearly and unmistakably give the arbitrator power to rule on his own jurisdiction, thus delegating questions of arbitrability to the arbitrator."); and *Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230 (11th Cir. 2018).  By incorporating the AAA Commercial Arbitration Rules, the parties expressly provided that "the arbitrator shall have the power to rule on his or her own jurisdiction."  *See* AAA Rule 7(a).

16.     The transaction at issue is not a loan as there is neither an absolute right to repayment, term limit nor other elements necessary to characterize it as a loan under applicable law.  It is a purchase of receivables governed by Virginia law, under which Debtor's argument that the transaction actually is a loan, even if true, would not be usurious, and the claims set forth in the Complaint will not lie pursuant to the terms of the Revenue Based Factoring Agreement expressly agreed to by KEM.

17.     The Complaint is subject to setoff and recoupment to the extent of the value KEM received.

18.     Unjust enrichment.   Debtor's requested relief would result in its unjust enrichment.  Core provided a benefit upon Debtor by paying Core $243,680 for its receivables, which Debtor both requested and accepted.  Debtor received such funding on October 26, 2017, over 470 days ago.  During this time period, Debtor has received the benefit of the full funded amount and all receivables generated while Core has not received the full benefit of its bargain. It would be inequitable for the Debtor to retain this benefit without paying the value thereof.  It would also be inequitable to allow the Debtor to retain this benefit given its fraudulent acts and the act of conversion, as detailed in paragraphs 3 and 4 above and which are expressly incorporated herein.

19.     KEM promised to sell and provide Core its future receivables in exchange for an up-front lump sum, which KEM should have reasonably expected Core to act and rely upon. Core did reasonably rely upon this promise, which was to Core's detriment.  Injustice can only be avoided by enforcing the promise.

20.     Any transfers at issue in Plaintiff's Amended Complaint were not made with the actual intent to hinder, delay, or defraud other creditors.   Moreover, such transfers were

automatic debits from Core's bank account conducted in accordance with the Revenue Based Factoring Agreement and pursuant to ordinary business and industry terms.

21.     Core was a bona fide purchaser for value.

22.     KEM's claims and/or remedies are barred or limited, in whole or in part, by the express terms of the Revenue Based Factoring Agreement, including but not limited to, its disclaimers, limitations on damages, arbitration provisions, anti-waiver provisions, waiver of liability, indemnification provisions, characterization of the transaction as a sale of future receivables rather than as a loan, remedies, etc., and by the express terms of any other document governing the transaction at issue, including but not limited to the Security Agreement signed by KEM and the Guaranty Agreement signed by Kenneth Martin and Nancy Martin.  (*See, generally* Exhibit A.)

23.     Core acted in good faith at all material and/or relevant times.

24.     Election of remedies.  KEM's claims and/or remedies are barred by KEM's election of remedies under the Revenue Based Factoring Agreement.

25.     As a separate affirmative defense to the Complaint, and to each purported claim thereof, Core, without admitting that the Complaint states a claim, submits that KEM's claims are barred, in whole or in part, because KEM has not sustained any loss, damage, harm or detriment in any amount.

26.     The transfers of the receivables purchased by Core under the Revenue Based Factoring Agreement are not property of KEM and thus are not subject to a fraudulent transfer claim.

27.     Core's Due Process rights are violated to the extent Plaintiff's Amended Complaint seeks to have the Bankruptcy Court, or any other Court, determine, and they do so

determine, any issues within the scope of the parties Arbitration Agreement, rather than requiring those issues to be determined in the first instance by an Arbitrator as required by the Parties' Arbitration Agreement.

### Reservation of Rights

Defendant has undertaken in good faith to identify all of the special and/or affirmative defenses that it may have with respect to Plaintiff's claims.  Defendant reserves the right to reevaluate, restate, and/or delete any defenses and/or to assert additional defenses as it deems appropriate, or to assert, or seek leave in this Court if so required, to assert any counterclaim, cross-claim, and/or third party claims available under applicable law, or as may be discovered during the course of additional discovery and investigation.

/s/  J. Ryan Yant
Robert M. Quinn
Florida Bar No. 305898
J. Ryan Yant
Florida Bar No. 104849
Primary Email:   rquinn@carltonfields.com
Secondary Email:  ryant@carltonfields.com
Secondary Email: dlester@carltonfields.com
Carlton Fields Jorden Burt, P.A.
P.O. Box 3239
Tampa, FL  33601-3239
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133
*Attorneys for Kapitus Servicing, Inc.,*
*formerly Colonial Funding Network, Inc.,*
*servicing agent for Core Business Finance,*
*Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **February 8, 2019**, I electronically filed this Answer and Defenses to Plaintiff's Amended Complaint through the Court's E-Portal System, thereby the serving all registered users including:

Michael C. Markham
Johnson, Pope, Bokor,
Ruppel & Burns
401 E. Jackson Street, Suite 3100
Tampa, FL  33602
E-mail:  MikeM@jpfirm.com

/s/  J. Ryan Yant
J. Ryan Yant
Florida Bar No. 104849